UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JERRY B. PATRICK,

        Plaintiff,        Case No. 1:15-cv-1021

v.        Honorable Robert Holmes Bell

UNKNOWN ARNSMAN et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Jerry B. Patrick was a prisoner at the Pugsley Correctional Facility (MPF) at the time he filed his action in the Eastern District of Michigan. He subsequently was released on parole. Plaintiff named as Defendants the State of Michigan, the Michigan Department of Corrections (MDOC), MPF Librarian (unknown) Arnsman, and MPF Classification Director (unknown) Hanson. In an order and judgment issued on February 2, 2015, the Eastern District of Michigan dismissed the action on the ground that Defendants State of Michigan and MDOC were entitled to sovereign immunity. (*See* docket ##7, 8.) Plaintiff sought relief from the judgment, indicating that the two individual Defendants named in the action were not addressed by the court. The court granted the motion and reopened the case, but transferred the action to this Court because both of the remaining individual Defendants resided in this district.

Plaintiff alleges that MPF does not hire African Americans, like himself, to work skilled positions in the prison. Defendant Arnsman hired Plaintiff on February 4, 2014 to work as a legal aide in the library. Plaintiff alleges that he was not in the legal aide pool, but in the tutor pool, because he was an educator with a bachelor's degree and a teaching certificate. He did not have any experience with legal materials and was not trained as a paralegal. Plaintiff contends that he was hired in response to grievances filed by two other African Americans, prisoners Dixon and Williams, who complained that they had been denied legal aide positions on the grounds of race. Plaintiff asserts that his hiring was motivated by Arnsman's intent to deny Dixon and Williams jobs as legal aides. Plaintiff also alleges that, because his experience did not fit the job description and he did not have the background for the position, he was set up to fail. He further alleges that he

"never received any orientation or training and therefore found it almost impossible for him to perform his job." (Compl., docket #1, PageID #3.) Plaintiff also asserts:

> I've been accused of talking to a staff member, and stealing of stamp envelopes with the writing of do not remove from library.  My locker has been searched three times in last three days nothing was ever found.

(*Id.*)  On March 6, 2014, Defendant Arnsman called him over and told him he was terminated. Arnsman told Plaintiff that he had received a report that Plaintiff allowed an inmate behind the counter to help find a book.  Plaintiff responded that he was never told that he could not allow prisoners behind the counter, but Arnsman fired him anyway.

Plaintiff argues that he was not properly trained in accordance with prison policy and that, despite not knowing all the rules, he did an adequate job during the five-week period he was employed.  In addition, he asserts that his termination was in violation of prison policy because he was not warned or counseled.  He contends that Defendant Hanson ignored policy in changing his classification and upholding the termination, in violation of prison policy.  He also asserts that his treatment was the result of racial discrimination.

For relief, Plaintiff seeks back pay for the days he has missed work, damages for pain, suffering and humiliation, and placement in a position that suits his skills.

## Discussion

I.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

- 3 -

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff complains that he was not given a fair chance to do his job and was set up to fail, because Defendants knew that he did not have significant background in legal issues, and they did not train him as required by MDOC policy. He also alleges that his termination was conducted in violation of prison policy.

Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, Plaintiff fails to state a due process claim based on his termination. The Sixth Circuit has consistently found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g., Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same). Further, "as the Constitution and federal

law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Under these authorities, Plaintiff fails to state a due process claim arising from the termination of his prison employment.

### B. Equal Protection

Plaintiff makes a series of allegations concerning racial discrimination. First, he alleges that Defendants generally have discriminated against African Americans in skilled employment positions, including the hiring of legal aides. Second, he alleges that he was hired as a legal aide to prevent the hiring of prisoners Dixon and Williams, who were complaining and who, unlike Plaintiff, were in the legal aide pool. Third, he suggests that his locker was searched for racial reasons. Fourth, he alleges that he was terminated for discriminatory reasons.

To the extent that Plaintiff alleges that he was hired to prevent Dixon and Williams from being hired or that Defendants previously discriminated against others, his claim fails because he lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to

proceed *pro se*, but only with respect to her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Calif. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969). Relying on this statute, the Sixth Circuit has squarely held that a *pro se* party may not prosecute a representative wrongful death action brought under section 1983, where the beneficiaries thereof included persons other than himself. *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). As a consequence, Plaintiff lacks standing to raise his first two equal protection challenges.

With respect to Plaintiff's remaining two equal protection claims, Plaintiff fails to allege sufficient facts to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 570. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a governmental action adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and

rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265-66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff's allegations of racial discrimination are wholly conclusory. As earlier discussed, a complaint need not contain detailed factual allegations, but a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. Plaintiff alleges no facts constituting direct evidence of discriminatory motive or purpose in Plaintiff's hiring, training or termination. *See Umani*, 432 F. App'x at 458. Moreover, Plaintiff fails to allege a prima facie claim under the indirect, burden-shifting framework of *McDonnell Douglas*, 411 U.S. at 792. To establish a prima facie case of discrimination under the *McDonnell Douglas* test, a plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job; (3) he was subjected to an adverse employment decision; and (4) he was "replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *See Arendale v. City of*

*Memphis*, 519 F.3d 587, 603 (6th Cir. 2008) (internal quotations omitted). To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *see also Mitchell v. Toledo Hosp.*, 964 F.2d 577, 586 (6th Cir. 1992).

Plaintiff wholly fails to meet multiple elements of the test. By Plaintiff's own admission, he was not qualified for the job when he was hired and, while Plaintiff believes he subsequently performed adequately, he does not dispute that he made errors. Instead, he claims that Defendants should have done more to make sure he understood all the rules. However, although Plaintiff claims that prison policy required that he be trained, he makes no allegation that other similarly situated, non-protected employees received more or better training. Similarly, he does not allege that similarly situated, non-protected employees were not terminated for making the same sorts of mistakes. Finally, Plaintiff makes no allegation that he was singled out in the investigation of stolen library materials, and he fails to identify any white legal aide who was similarly situated in all relevant circumstances who was treated differently.

For all these reasons, Plaintiff utterly fails to allege a plausible claim of race discrimination. His equal protection claim therefore fails.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: <u>October 15, 2015</u>        /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      UNITED STATES DISTRICT JUDGE